UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR19-5364 BHS |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |
| v. | |
| JUSTIN ANDREW WILKE, | |
| Defendant. | |

This matter comes before the Court on Defendant Justin Wilke's ("Wilke") motion to suppress. Dkt. 50. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On August 28, 2019, Wilke was charged by indictment with eight counts relating to his alleged involvement in a conspiracy to unlawfully remove and sell timber obtained in the Olympic National Forest. Dkt. 1. Trial is set to commence on January 14, 2020.

On December 19, 2019, Wilke filed a motion to suppress. Dkt. 50. On December 27, 2019, the Government responded. Dkt. 67. Wilke did not reply.

## II. FACTUAL BACKGROUND

The indictment alleges that Wilke and co-defendant Shawn Williams ("Williams") conspired to unlawfully fell and sell valuable maple trees growing in the Olympic National Forest between April and August 2018. Dkt. 23. The indictment further alleges that on August 3, 2018, Wilke, co-defendant Shawn Williams, and uncharged co-conspirator/witness Lucas Chapman ("Chapman")[1] located one such valuable maple tree but a bee's nest at the tree's base prevented Wilke and/or Williams from harvesting the tree. *Id.* ¶ 13(f)–(i). Wilke and Williams are alleged to have poured gasoline on the bee's nest, setting it afire. *Id.* ¶ 13(i). Although Wilke, Williams, and Chapman later attempted to extinguish the fire using water bottles, the indictment alleges that it spread, ultimately growing into a large forest fire known as the "Maple Fire" which burned nearly 3,300 acres of public land and cost more than four million dollars to suppress. *Id.*

## III. DISCUSSION

Wilke moves to suppress statements made by Chapman. Dkt. 50. Specifically, Wilke asks the Court to conduct an evidentiary hearing to determine whether Chapman's statements were voluntarily made before admitting them at trial. *Id.* at 1. Because Wilke fails to allege sufficient facts to establish coercion in Chapman's statements, and further, fails to persuade the Court that the statements are unreliable such that admitting them would violate Wilke's own right to a fair trial, the motion is denied.

---

[1] The indictment refers to Chapman as "Person 2."

## A. Legal Standard

A criminal defendant lacks standing to assert a violation of a third party's Fifth Amendment right against self-incrimination. However, because "illegally obtained confessions may be less reliable than voluntary ones," the introduction of another's coerced confession can violate the defendant's own Fifth Amendment right to due process at trial. *Douglas v. Woodford*, 316 F.3d 1079, 1092 (9th Cir. 2003) (citing *Clanton v. Cooper*, 129 F.3d 1147, 1157–58 (10th Cir. 1997); *United States v. Mattison*, 437 F.2d 84, 85 (9th Cir. 1970)). Thus, "[a] defendant may assert her own Fifth Amendment right to a fair trial as a valid objection to the introduction of statements extracted from a non-defendant by coercion or other inquisitional tactics." *United States v. Merkt*, 764 F.2d 266, 274 (5th Cir. 1985) (footnote omitted).

A defendant's due process rights are implicated when the government introduces evidence "obtained by extreme coercion or torture." *United States v. Chiavola*, 744 F.2d 1271, 1273 (7th Cir. 1984). The issue is not whether the witness's own Fifth Amendment rights were violated by the questioned interrogation, but rather, "whether the government's investigation methods resulted in a fundamentally unfair trial" for the defendant. *Id.* at 1273.

## B. Application

As a threshold issue, the Government denies Wilke's assertion that it will offer at trial statements from "at least three law enforcement interviews of [Chapman], only one of which has been disclosed." Dkt. 67 at 6 (citing Dkt. 50 at 1). Instead, the Government counters that it interviewed Chapman only twice, fully disclosed the substantive content

of Chapman's statements during those two interviews to defense, and further, asserts that it will not rely on his statements at trial because Chapman will provide live testimony. *Id.* at 1, 4–6. Wilke appears to concede these factual issues because he failed to reply or otherwise challenge these assertions made in response to his motion.

A witness's live testimony is admissible at trial even if the witness was previously coerced into providing an involuntary confession. *Douglas*, 316 F.3d at 1092. In this case, the Court credits the Government's assertion that Chapman will testify at Wilke's trial. Consequently, the Court does not anticipate that it will admit, nor will the Government rely on, Chapman's two prior statements to law enforcement. Wilke's due process rights are not implicated by statements not admitted into evidence at his trial.

Normally, Chapman's voluntary testimony would be sufficient to resolve Wilke's motion relating to allegedly coercive conditions during Chapman's prior interviews with law enforcement. *Id.* at 1091; *see also Merkt*, 764 F.2d at 274. However, the Government does intend to offer at trial the fact that Chapman disclosed "two specific pieces of information during his interviews." Dkt. 67 at 1; *see also* Dkt. 38 (Government's Motions in Limine). Thus, the Court examines whether this limited introduction of Chapman's prior statements would render Wilke's trial fundamentally unfair, thereby violating his right to due process.

The two specific pieces of information the Government seeks to admit from Chapman's prior statements are as follows. "First, in his August 2018 interview, Chapman told officers that Chapman and others used Gatorade bottles in an effort to douse the fire. Second, in June 2019, Chapman accurately described the location of a

maple tree Wilke [allegedly] had felled days before the fire." Dkt. 67 at 1. Wilke fails to establish that introduction of these specific statements would violate his right to due process for at least two reasons.

      First, and most significantly, the Court agrees with the Government that Wilke has failed to provide sufficient facts establishing that Chapman's statements are a product of coercion rendering them so unreliable as to violate Wilke's right to a fair trial. Although Wilke must do more than establish that Chapman's statement was involuntary to sufficiently allege a violation of his own right to due process, he fails to meet even this lower standard. Courts assessing the voluntariness of a statement consider "both the characteristics of the accused and the details of the interrogation." *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (quotation omitted). In this case, Wilke concedes he has an audio recording of Chapman's first interview yet fails to identify with specificity a single circumstance where the questioning law enforcement officer employed a coercive tactic. Likewise, Wilke also claims that an evidentiary hearing will show Chapman "suffers meaningful cognitive disabilities that made him particularly vulnerable . . . ." to interrogation but cites no evidence supporting his bare assertion.[2] Dkt. 50 at 5; *see also id.* at 1 (requesting the Court consider "*any* coercive circumstances and [Chapman's] *apparent* vulnerability to coercion") (emphasis added). Because Wilke

---

[footnote 2 redacted]

ORDER - 5

fails to establish with sufficient specificity that either of Chapman's statements were obtained through "torture or extreme coercion," he similarly fails to establish that this Court's limited admission of those statements would render his trial fundamentally unfair. *Chiavola*, 744 F.2d at 1273.

Second, Wilke has not shown that Chapman's statements quoted above are unreliable. The Government asserts that it will introduce the fact that Chapman described (1) the Gatorade bottles and (2) the location of another felled maple tree in his interviews "not to establish the truth of those statements, but rather to establish Chapman's knowledge of the events surrounding the fire, and more generally, Wilke's poaching operation." Dkt. 67 at 2 (citing Dkt. 38 at 9–11). Statements not offered to prove the truth of the matter asserted in the statement are not hearsay. Fed. R. Evid. 801(c). While the potential unreliability of hearsay evidence has long concerned courts, here Chapman will testify, and thus be subject to Wilke's cross-examination on, the content of these two statements not offered for their truth and the circumstances under which he made them. Moreover, the Court credits the Government's assertion that both statements are significantly corroborated by the testimony of investigators and other physical evidence it will introduce—i.e., the presence of Gatorade bottles at the fire's origin and an additional felled maple located in the place Chapman described. Dkt. 67 at 3, 5, 9. Consequently, the Court is not persuaded that Chapman's statements are inherently unreliable or that the limited introduction of them at Wilke's trial would render the trial fundamentally unfair.

For the same reasons, the Court finds it unnecessary to conduct an evidentiary hearing on the motion. *United States v. Howell*, 231 F.3d 615, 620–621 (9th Cir. 2000)

(affirming denial of evidentiary hearing where defendant failed to allege facts sufficient to support relief). Accordingly, to the extent that Wilke moves to suppress the two specific pieces of information from Chapman's statements that the Government will offer at trial, the motion is denied. However, Wilke may still challenge the introduction of the statements based on a lack of foundation or other proper objection at trial. Nor does this ruling preclude Wilke on cross-examination from attempting to impeach Chapman's in-court testimony consistent with the defense theory of an alleged use of improper interrogation techniques.

The Court will provide more detailed rulings on other evidentiary issues presented by the admission of Chapman's statements raised by the motions in limine, such as the appropriateness of a limiting instruction, at the pretrial conference on January 6, 2020.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Wilke's motion to suppress, Dkt. 50, is **DENIED**. The Government's motion to seal its response, Dkt. 66, is **GRANTED.** Because this order references third party Lucas Chapman's medical information, the Clerk of Court shall file a redacted copy in the docket but file an unredacted copy under seal.

Dated this 2nd day of January, 2020.

BENJAMIN H. SETTLE
United States District Judge