UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>JUSTIN ANDREW WILKE,<br><br>                    Defendant. | CASE NO. CR19-5364 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO CONTINUE TRIAL |

This matter comes before the Court on Defendant Justin Andrew Wilke's ("Wilke") motion to continue trial currently set for January 14, 2020. Dkt. 75. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 28, 2019, Wilke was charged by indictment with eight counts relating to his alleged involvement in a conspiracy to unlawfully remove and sell valuable maple trees obtained in the Olympic National Forest between April and August 2018. Dkt. 1. One of those charges, using fire in furtherance of a felony (count eight), carries a mandatory 10-year sentence. *Id.*

ORDER - 1

Wilke's original trial date was December 3, 2019. In November 2019, the Government moved to continue trial in anticipation of the transfer of Wilke's co-defendant, Shawn Williams ("Williams") into federal custody. The Court continued Wilke's trial to December 5, 2019 over Wilke's objection. Dkt. 20.

The Court set Williams's trial for January 14, 2020. The Government then filed a motion to continue Wilke's trial to the same date. Dkt. 26. Wilke initially indicated he would oppose the motion, but on the day his response was due, he withdrew his opposition. Dkt. 39. Accordingly, the Court granted the motion and set Wilke's case for trial with Williams's case on January 14, 2020. Dkt. 45.

On December 18, 2019, the grand jury returned a second superseding indictment that made no changes to Wilke's charges but added charges against Williams. Dkt. 51. On December 27, 2019, Williams entered into a plea agreement and pled guilty to two of those charges. Dkts. 62, 63. In the statement of facts within his plea agreement, Williams admitted that a member of a group consisting of Williams, Wilke, and uncharged co-conspirator/witness Lucas Chapman ("Chapman") started a large forest fire known as the "Maple Fire" while attempting to fell a tree containing a bee's nest as part of the tree poaching operation. Dkt. 62, ¶ 8(i)–(j). Williams did not enter into a formal cooperation agreement with the Government or agree to testify against Wilke as part of his plea agreement. Williams's sentencing date is March 23, 2020.

Pursuant to recent changes in the local criminal rules, the Government filed its trial materials fourteen days in advance of Wilke's trial, on December 31, 2019. Dkts. 68–72.

On January 3, 2020, the day Wilke's trial materials were due, he filed a motion to continue trial. Dkt. 75. On January 5, 2020, the Government responded. Dkt. 80.

On January 6, 2020, the Court held a pretrial conference. Dkt. 83. At the pretrial conference, the Court issued a preliminary ruling indicating it anticipated denying the motion to continue because Wilke had failed to establish that a continuance was needed, and the Government had provided sufficient information that a continuance would prejudice it. However, the Court indicated it would accept Wilke's reply to the motion before issuing a final written ruling.

On January 7, 2020, Wilke replied. Dkt. 85. Also on January 7, 2020, the Government filed a status report updating the Court on evidentiary issues and representations made by Wilke's counsel at the pretrial conference. Dkt. 86.

## II. DISCUSSION

Wilke's posture has been to proceed to trial throughout this case. However, his counsel now asserts that the Government has disclosed voluminous discovery since mid-December, and that a pre-planned vacation of his defense investigator and foreseeable scheduling conflicts of co-counsel prevent him from adequately following up on this discovery in advance of trial. Counsel further asserts that his inability to review and investigate potential exculpatory information presented by this discovery will prevent him from functioning competently as required by the Sixth Amendment at trial. In response, the Government demonstrates a great deal of prejudice to its case supporting the denial of the motion. Nevertheless, the Court concludes that on balance the relevant factors weigh in favor of continuing trial. Therefore, the Court grants the motion.

A.  **Legal Standards**

A trial judge has broad discretion in deciding a motion to continue trial. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). In determining whether a defendant's request to continue trial is warranted, courts consider four factors: (1) counsel's diligence in preparing his defense prior to the trial date; (2) whether the continuance would satisfy the defendant's needs; (3) the inconvenience a continuance would cause the court and the government; and (4) the extent to which the defendant would suffer harm if the continuance was denied. *United States v. Zamora-Hernandez*, 222 F.3d 1046, 1049 (9th Cir. 2000) (citing *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985)). The fourth factor is the most important. *Id.* (citing *United States v. Mejia*, 69 F.3d 309, 316 (9th Cir. 1995)).

1.  **Diligence**

The first factor is counsel's diligence in preparing the defense prior to trial. *Id.* (citation omitted). The Court is satisfied that Wilke's counsel has been diligent in their preparation for trial. For example, one of the bases for the motion to continue is Wilke's counsel's need to review large amounts of discovery disclosed since mid-December. Dkt. 75 at 1–7. While it was likely foreseeable to counsel that the Government would turn over discovery close to the trial date in a case where the defendant pushes for trial and the Court grants only one brief continuance, and moreover, that these disclosures would coincide with pre-planned vacation and other trial commitments held by Wilke's defense team falling right before the trial date, this does not mean that counsel has not been diligent in their trial preparation. Counsel cannot exercise diligence by reviewing and following up on material that has not yet been disclosed.

Moreover, Wilke asserts that newly-discovered exculpatory evidence in the form of information that a bag and a key found at the origin of the Maple Fire do not belong to Wilke necessitates the continuance. *Id.* at 1–5. In response, the Government argues that Wilke is manufacturing issues because it turned over evidence concerning the key in October, and further, that Wilke's counsel inspected the key in November. Dkt. 80 at 8–9. The Court agrees that Wilke was on notice of the potential challenge to his ownership of the key since at least the November inspection. However, co-defendant Williams's statement made December 4, 2019 that the bag and key belong to Alan Richert and his girlfriend, respectively, was not disclosed to Wilke until January 1, 2020, two days before he filed his motion to continue trial.[1] Although the Government stated in its response that testing the key to determine whether it belonged to Richert's girlfriend's car could be accomplished during the early portion of this week, a position the Court initially supported in its preliminary ruling, the Court has now decided that the cumulative discovery issues presented by the motion (discussed below) and need for further investigation into the key's ownership as bolstered by Williams's statement, support a continuance.[2] In any case, although Wilke's counsel concedes he could have spotted the

---

[1] Although the discovery log in this case indicates that Williams's call was disclosed on December 31, 2019, *see* Dkt. 81, the Court credits Wilke's assertion that discovery is typically available to the defense one day after it is disclosed, Dkt. 75 at 5 n.3. Moreover, since January 1 is a holiday, Wilke likely reviewed this discovery only one day in advance of filing his motion.

[2] This issue has been somewhat obviated by the Government's status report indicating it tested the key on January 6, 2020 to determine whether it matched the door or ignition of the vehicle driven by Richert's girlfriend. Dkt. 86 at 2. It did not. *Id.* The Court acknowledges that the lack of a match of the key to the person described by Williams significantly undercuts the credibility of his statement, and thus, perhaps narrows the scope of Wilke's counsel's additional
ORDER - 5

issue sooner, the Court does not find that counsel was not diligent in investigating the ownership of the key.

Outside of the key issue, counsel recently received approximately 3,000 pages of discovery containing the Facebook account of Wilke's girlfriend. Dkt. 81. Although the Government argues that this information was directly available to Wilke, at least during the beginning stages of the case when his girlfriend was in communication with counsel, the Court credits counsel's assertion made at the pretrial conference that counsel has been unable to reach the girlfriend for approximately six weeks. Thus, counsel needs more time to review the girlfriend's Facebook account but was unable to obtain this information directly from the girlfriend herself. This conclusion is not altered by the Government's status report revealing that, in fact, Wilke has been in regular email contact with his girlfriend as recently *as the morning of the pretrial conference* as monitored at the Federal Detention Center ("FDC"). Dkt. 86 at 2–3. It is extremely regrettable that Wilke apparently knowingly failed to tell his counsel he had had contact with his girlfriend, which allowed counsel to misrepresent information to this Court. However, to the extent counsel made misrepresentations, the Court finds they were unintentional. And, Wilke's communication with his girlfriend does not mean that his *counsel* has been able to access her or her Facebook account if she has indeed failed to return counsel's attempts to contact her over the past six weeks. Wilke has placed his

---

investigation concerning the key. Regardless, counsel has an obligation to investigate whether the key belongs to someone else.

counsel in a tough position, but the fact remains that counsel must still review the Facebook account which they (counsel) were unable to directly access earlier.

Finally, Wilke's counsel points to the difficulty they have had in preparing for trial given Wilke's moderate illiteracy. Dkt. 85 at 2–4. Because this case concerns subject matter outside of counsel's arena of knowledge (maple poaching and Wilke's community), counsel explains that in order to accurately assess relevant evidence, they must meet with Wilke at the FDC and rely on him to educate them. Moreover, because the case against Wilke relies heavily on witness statements, counsel must also travel to the FDC and read the relevant documents out loud to him in order to fully understand their significance. Preparation for trial has been restricted by these burdens, as well as the travel time and institutional constraints presented by visiting the FDC. Overall, the Court concludes that counsel has been diligent in preparing the case for trial.

### 2. Usefulness of Continuance

The second factor "is the likelihood that the continuance would serve a useful purpose." *Mejia*, 69 F.3d at 315 (citing *Flynt*, 756 F.2d at 1360). There is no doubt that a continuance would be useful to Wilke on the basis that more time is needed to review the discovery produced by the Government every few days since mid-December.[3] A continuance would not only enable Wilke to thoroughly review this discovery, but also

---

[3] In addition, the Government indicates it just received and has not yet produced to Wilke a physical extraction of his girlfriend's cell phone. Dkt. 86 at 1–2. The Government stresses that this physical extraction is unlikely to produce any relevant evidence because an earlier, "logical" extraction of the phone that was produced to Wilke did not. *Id.* While the Court agrees that the physical extraction may be unlikely to yield evidence material at trial, it nevertheless is evidence that Wilke's counsel has an obligation to review.

allow him to follow up on and investigate any exculpatory information contained within the Government's disclosures without interfering with his trial preparation. Therefore, the Court concludes that granting the continuance would serve the useful purpose of allowing Wilke to adequately prepare for trial.

There is also the issue of Williams's live testimony. Dkt. 75 at 7–11. Wilke asserts that if the case were not continued, the Government's introduction of Williams's hearsay statements at Wilke's trial (because Williams has not yet been sentenced and would therefore invoke his Fifth Amendment privilege not to testify) would violate Wilke's own due process rights. While the Court agrees with the Government that the chance that a co-defendant might provide exculpatory testimony after sentencing is not a valid basis to continue a defendant's trial, "[t]here can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility." *Mejia*, 69 F.3d at 315. Thus, although the Court emphatically rejects Wilke's position that a continuance is needed on the basis that admitting Williams's statements without Williams's live testimony would violate Wilke's due process rights,[4] the Court finds that the second basis for the continuance, i.e., securing Williams's live testimony, serves a useful purpose. Accordingly, the second factor weighs in Wilke's favor.

---

[4] Wilke concedes that no authority has ever applied his unusual theory applying due process rights to confrontation in a criminal trial when "the Confrontation Clause is not applicable." Dkt. 75 at 9 n.5. Without authority supporting this theory, the Court declines his invitation to apply a standard applicable to probation revocation hearings to proceedings at trial.

ORDER - 8

### 3. Inconvenience

The third factor is whether the continuance would inconvenience the court and the government. This factor weighs heavily in the Government's favor. For example, Wilke's posture of proceeding to trial, first by opposition to the Government's motion to continue, and then by waiting until the evening of the last court day before the pretrial conference to file his own motion, forced the Government to twice prepare its case for trial. This preparation included using the limited resources of its sole investigator to locate and serve numerous witnesses living on the Olympic Peninsula, making travel arrangements and purchasing travel for out-of-state witnesses, and enrolling Chapman, a key witness who is represented to be highly transient, into a federal witness resource program which lasts only 30 days and cannot be renewed, and which has likely prevented the Government from taking the unenviable step of arresting its key witness or risking his unavailability at trial.

While Wilke assumes that the fact that he failed to demonstrate that Chapman suffers meaningful mental health issues means there is no reason to believe Chapman will disregard his obligation to appear at trial, the Court disagrees. Instead, the Court recognizes that (1) Wilke himself allegedly speculated that the Government would have difficulty locating Chapman, (2) the Government has at times been unable to locate him, and (3) as a matter of common sense, it is generally more difficult to keep in contact with transient persons, even those who are represented by attorneys. Thus, Wilke's motion to continue trial past the expiration of the unrenewable witness program Chapman is

participating could conceivably prejudice the Government's interest in a reliable prosecution of Wilke.

Additionally, several of the Government's witnesses are unavailable in the months following the existing trial date. The Government has provided information sufficient to demonstrate that a continuance would cause it and its witnesses great inconvenience.

**4.      Prejudice**

The fourth and most important factor is the extent of the prejudice the defendant would suffer if the continuance was denied. *Zamora-Hernandez*, 222 F.3d at 1049 (citation omitted). As discussed above, the Court rejects Wilke's argument that he would suffer prejudice in the form of a Fifth Amendment violation if the Court refused to continue the trial to a date after Williams's sentencing. However, the Court has accepted his position that voluminous discovery produced since mid-December requires follow up investigation, which, given Wilke's constraints, the full defense team's unavailability the week before trial, and the challenges of visiting the FDC, is not able to be completed prior to the existing trial date. In turn, this interferes with counsel's ability to provide competent representation at trial. Therefore, Wilke has demonstrated prejudice on the motion in the form of a potential violation of his Sixth Amendment rights.

On balance, the question presented to the Court is close. However, the factors weigh in Wilke's favor. Therefore, the Court grants the motion. Given the Court's own scheduling constraints, the Court declines the Government's request to continue the trial

only one week. The trial will proceed on March 24, 2020.[5] The Court notes that nothing in this order requires the Government to produce Williams for trial. The Court appreciates the substantial effort of the Government in timely preparing its case for the January 14 trial date.

For the reasons discussed above, the Court also concludes that the ends of justice served by its granting the continuance outweigh the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7). Therefore, the period of delay resulting from the continuance shall be excluded from the computation of time within which Wilke's trial must commence. *Id.*

### III. ORDER

Therefore, it is hereby **ORDERED** that Wilke's motion to continue trial, Dkt. 75, is **GRANTED.** Trial shall commence on **March 24, 2020**, with a pretrial conference set for **March 16, 2020**. Any trial pleadings shall comply with local criminal rule, except that any supplemental motions in limine shall be filed at least 10 days before the pretrial conference, and any response shall be filed at least 5 days before the pretrial conference.

The Court will issue written rulings on the second set of motions in limine filed by the Government, Dkt. 79, after Wilke has responded and the motions are ripe. The Court

---

[5] The only potential conflict with this date is the availability of the investigating officer, who the Government represents will be attending a leadership training "for significant portions of March." Dkt. 80 at 6. If the officer's unavailability coincides with the trial date, the Court requests the Government file a motion for a brief continuance.

takes this action to allow the parties to prepare for trial with the benefit of important evidentiary rulings.

Dated this 8th day of January, 2020.

_____
BENJAMIN H. SETTLE
United States District Judge